UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| EDDIE GENE FRAKER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 6:18-CV-201-REW |
| v. | ) | |
| | ) | |
| SANDRA BUTLER, Warden, | ) | OPINION & ORDER |
| | ) | |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Eddie Gene Fraker challenges his sentence under § 2241. DE 19 (Supplemental Petition); *see also* DE 1 (Petition). The Government responded, DE 20, and Fraker replied, DE 21. This matter stands ripe for review.

**I**

Before addressing Fraker's current claim, a brief detour to address case posture in this District: Fraker (previously convicted and sentenced federally in Tennessee) initially challenged his sentence based on *United States v. Stitt*, 860 F. 3d 854 (6th Cir. 2017) (en banc). DE 1 (Petition). The Court ordered the Government to respond but noted that Fraker's counsel failed to advise that the Supreme Court had already granted *certiorari* to review *Stitt*. DE 6 (Order). Thus, the Court directed the Government to state its position as to proper treatment pending the Supreme Court's review. *Id.* The Government then conceded Fraker's entitlement to relief under the Sixth Circuit's *Stitt* holding. DE 10 (Resp.). Although the Government contended that *Stitt* was wrong, it argued that concerns regarding Fraker's potential to overserve warranted granting the petition without awaiting the Supreme Court's decision. *Id.*

1

However, four days after briefing concluded, *see* DE 13 (December 6, 2018, Reply), the Supreme Court unanimously reversed the Sixth Circuit's decision. *See United States v. Stitt*, 139 S. Ct. 399 (2018). With Fraker's sole ground for relief vitiated, the Government filed an amended response opposing the petition. *See* DE 14 (Am. Resp.). Fraker then abandoned his *Stitt* claim and pivoted to an entirely new theory. *See* DE 15 (Reply to Am. Resp.) at 1–2. It is that claim, asserted via supplemental petition, DE 19, and briefed by the parties, DE 20 & 21, to which the Court now turns.

## II

In the Eastern District of Tennessee and pursuant to a plea agreement, Fraker pleaded guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g), exchanged for the Government's motion to dismiss three like charges. *United States v. Fraker*, No. 3:08-cr-36-PLR-CCS-1 (E.D. Tenn. 2008) ("*Fraker I*"), ECF No. 37 (Plea Agreement). The agreement noted that Fraker faced variable penalties depending on the trial court's determination regarding Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), applicability. Plea Agreement at ¶ 1(a). Fraker admitted multiple prior Tennessee felony convictions, including: two counts of Aggravated Burglary in Case No. 77313 (Knox Co. 2003); Theft and Forgery in Case No. 69952 (Knox Co. 2000); Robbery, Vehicle Burglary, and Forgery in Case No. 70211 (Knox Co. 2000); and Attempted Burglary - Other than Habitation in Case No. 240-2003 (Sumner Co. 2005). *Id.* at ¶ 4(b). Fraker also waived his collateral attack rights with two exceptions: a § 2255 motion based on ineffective assistance of counsel or prosecutorial misconduct. *Id.* at ¶ 12(b).[1]

The PIR concluded that at least three (robbery, two counts of aggravated burglary, and attempted burglary) of Fraker's state convictions qualified as ACCA violent felonies and thus,

---

[1] Respondent asserts no affirmative defense on this basis.

under 18 U.S.C. § 924(e), Fraker was an armed career criminal, subject to a mandatory 15-year minimum. DE 9 at ¶¶ 22, 61–62 (PIR). At sentencing, Fraker argued that his attempted burglary and robbery convictions did not qualify as ACCA predicates, *Fraker I*, ECF No. 52 at 2–3 (Sentencing Memo.) and (mildly) contended that his two aggravated burglary convictions should only count once because he committed both offenses on the same day. *Id.* at ECF No. 54 at 5 (Sentencing Tr.). The trial court continued the hearing and ordered supplemental briefing on these issues. *Id.* at 19. The Government, lacking documentation of the state proceedings, did not push the attempted burglary as a potential predicate. *Id.* at ECF No. 56 at 6 (Gov. Resp. to Def. Obj.). However, the prosecution maintained that Fraker's robbery and two aggravated burglary convictions amounted to three ACCA qualifying violent felonies. *Id.* at 2–5.

At the continued sentencing, the trial court concluded that Tennessee robbery qualified as a violent felony. *Id.* at ECF No. 61 at 11–14 (Sentencing Tr.). With respect to the aggravated burglary convictions, records from the Tennessee prosecution contained the following allegations:

> Count One occurred on September 26th, 2002, and Count One states that: on or about the 26th day of September, 2002, in the state and county aforesaid, the Defendant did unlawfully and knowingly enter the habitation of Stephanie Goins without her effective consent, not open to the public, with intent to commit theft, in violation of TCA 39-14-403, and against the peace and dignity of the State of Tennessee.
>
> In Count Two . . . the information reflects that on or about the 26th day of September, 2002, in the state and county aforesaid, the Defendant did unlawfully and knowingly enter the habitation of Dirk Dandy (phonetic) without his effective consent, not open to the public, with intent to commit theft, in violation of TCA 39-14-403, and against the peace and dignity of the State of Tennessee.

*Id.* at 8–9.[2] Based on state records, the trial court concluded that the aggravated burglary convictions were for separate burglaries and counted as distinct predicate offenses:

---

[2] The contents of the state charging document were read into the record via sworn USPO testimony. *Id.* at 6–7. The trial court made the subject certified copies of the Tennessee information "part of

> The acts supporting Defendant's aggravated burglary convictions were committed at separate locations. It does not matter that the burglaries were committed on the same day. The fact that they were committed at separate residences is enough to constitute separate offenses for purposes of classifying the Defendant as an armed career criminal.

*Id.* at 15. This analysis focused on the § 924(e)(1) requirement that the predicates have been "committed on occasions different from one another." Accordingly, the trial court applied the ACCA and sentenced Fraker to a 180-month mandatory minimum term. *Id.* at 16, 18.[3] Fraker challenged the ACCA enhancement on direct appeal, but the Sixth Circuit rejected his contentions and affirmed the sentence. *United States v. Fraker*, 458 F. App'x 461, 464 (6th Cir. 2012) ("Because the district court correctly found that Fraker's robbery and two counts of aggravated burglary convictions were predicate offenses under the ACCA, Fraker's 180–month sentence is proper."). Fraker, via an April 2014 original § 2255 motion and again through an October 2015 amendment, challenged the ACCA enhancement under, respectively, *Descamps v. United States*, 133 S. Ct. 2276 (2013) and *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See Fraker I*, at ECF No. 69 (Motion to Vacate) & 77-1 (Proposed Amended Motion). The trial court found that, without

---

the record[.]" *Id*. at 10. However, the electronic record includes the related judgments, *id.* at ECF No. 56-3, but not the information. Fraker attached confirmatory documentation as exhibits to his supplemental petition. *See* DE 19 at 9–12. Though the tendered Tennessee information does not specify the precise dates, the judgments make clear that both offenses occurred on September 26, 2012. *See id.* at 11–12. *See United States v. Southers*, 866 F.3d 364, 369 (6th Cir. 2017) (relying on "judgments and indictments" as establishing "that the robberies occurred at two different business locations").

[3] Fraker's opposition to inclusion of two aggravated burglaries in the ACCA count began meekly. *See Fraker I*, ECF No. 54 at 5 ("[T]he first objection we had was the two aggravated [burglaries] that were committed within 24 hours of each other."). At the first hearing, defense counsel offered no oral argument, recognized "that the case law is against [Fraker] on that [point]," and relied on the sentencing memorandum objection. *See id.* The defense did not press the point at the second hearing. *See id.* at ECF No. 61 at 6–10. After the Government elicited testimony on the burglary convictions, Fraker declined to question the testifying probation officer, and offered no other substantive challenge. *See id.* at 9–10. This is unsurprising, given that the defense had evidently already waived the white flag on this point. Fraker presented no objection to the burglary convictions in his final sentencing brief. *See id.* at ECF No. 55.

4

resort to the *Johnson*-invalidated residual clause, Fraker had three predicate convictions for categorically qualifying ACCA crimes of violence and dismissed Fraker's motion. *See Fraker I*, at ECF No. 81 (Mem. Opinion). Finally, the Sixth Circuit, finding that the effort, to the extent it relied on *Mathis v. United States*, 136 S. Ct. 2243 (2016), did not advance a newly announced "rule of constitutional law[,]" denied Fraker authorization to proceed with a second or successive § 2255 motion. *In re: Eddie Gene Fraker*, Case No. 16-6114 (Jan. 12, 2017, Order).

### III

Here, Fraker contends that the Sixth Circuit's decision in *United States v. King*, 853 F.3d 267 (6th Cir. 2017) rendered erroneous the trial court's conclusion that Fraker committed both September 2002 aggravated burglaries "on occasions different from one another." DE 19. *King* held that a sentencing court may consider only the materials authorized in *Shepard v. United States*, 125 S. Ct. 1254 (2005) to make the "occasions different" determination; per Fraker, the *Shepard* materials available to the trial court did not (and do not) establish that he committed two distinct burglaries. *Id.* In response, the Government contends that Fraker cannot bring his *King* claim in a § 2241 petition because it is based on Sixth Circuit, rather than Supreme Court, precedent. DE 20 at 3. The prosecution further argues that *Shepard* materials (the Tennessee judgments and information, in this case) establish that Fraker committed two separate burglaries by burglarizing two separate homes. *Id.* at 4. At least on the merits, the Court agrees.

Generally, a federal prisoner may challenge the legality of his sentence only on direct appeal, in an initial § 2255 motion, and through a warranted second or successive § 2255 motion. *See United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001). Fraker already pursued a direct appeal and an initial § 2255 motion to no avail, and the Sixth Circuit previously denied him leave to file a second § 2255 motion. Thus, traditionally, Fraker could pursue his latest claim only by

5

seeking leave to file a successive § 2255 motion. However, a successive § 2255 motion is proper only if it (1) contains newly discovered evidence that "would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty," or (2) is based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). Here, there is no dispute that Fraker has not made either showing; indeed, he puts forth no new evidence, and his petition is based on cases, like *Mathis*, primarily of a statutory nature.

Still, under recent binding Sixth Circuit law, Fraker seeks to proceed with his petition under the § 2255(e) savings clause. That provision authorizes challenges to a conviction or sentence imposition under § 2241 where the § 2255 remedy "is inadequate or ineffective to test the legality of . . . detention." 28 U.S.C. § 2255(e); *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016). When a § 2241 petition targets a misapplied sentence, to qualify for savings clause relief the petitioner must initially establish that the challenge is based on: "(1) a case of statutory interpretation, (2) that is retroactive and could not have been invoked in the initial § 2255 motion"; ultimately, the petitioner must demonstrate "(3) that the misapplied sentence presents an error sufficiently grave to be deemed a miscarriage of justice or a fundamental defect." *Hill*, 836 F.3d at 594.

Fraker meets *Hill*'s first two requirements. The parties dispute whether Fraker's argument and the underlying *King* decision actually hinge on the Supreme Court's *Mathis* decision. DE 20 at 3–4; DE 21 at 5-7. The Court does not view that specific inquiry as the determinative question. To explain calls for a closer examination of *Hill*. *Hill*'s roots run to *Wooten v. Cauley*, which authorized savings clause relief based on a new retroactive statutory interpretation if the ruling "issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions" and, when applied, preponderantly established the

6

petitioner's actual innocence. 677 F.3d 303, 307–08 (6th Cir. 2012). Both the *Hill* and *Wooten* tests include elements in two separate categories. The first three *Wooten* elements and *Hill* prongs (1) and (2) set requirements a filer must meet before a court need even consider the merits of a petitioner's substantive argument. The final element for both tests sets the bar for determining a petitioner's ultimate entitlement to relief.

In *Hill*, the Government conceded the first two elements. Thus, the Circuit's elucidation of what, precisely, is required to satisfy those predicates was understandably limited. *See* 836 F.3d at 595. *Wooten* suggests that the initial elements test whether the petitioner is relying on an "intervening change in the law[.]" 677 F.3d at 307 (quoting *Peterman*, 249 F.3d at 462). What types of intervening changes? For *Hill* purposes, this seems to be: case-based retroactive changes in statutory interpretation that the petitioner could not have relied on at the time he pursued § 2255 relief. Yet, the question remains, what cases are good enough? The *Hill* litigants' concession on the first two elements foreclosed any need for the Circuit to deeply examine this question, but the decision sheds some guidance.

For instance, the *Hill* Court stated:

> Logic suggests that whether a misapplied enhancement results in a miscarriage of justice should not depend on whether the new statutory interpretation was announced before or after a prisoner filed a first § 2255 petition, **when the timing of the decision invalidating the enhancement is beyond the prisoner's control.**

836 F.3d at 597 (emphasis added). *Hill* called persuasive Fourth Circuit Judge Gregory's analysis: "Woven throughout is practicality—that it begs reason to expect a prisoner to bring a claim before the intervening law is decided[.]" *Id.* at 599 (citation omitted). Further, *Hill* took its elements from *Brown*, which provides further clarity. *Id.* at 595 (citing *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013)). The *Brown* Court rejected the Government's argument that the petitioner could "have raised his current argument in his" initial § 2255 motion "because it was foreclosed by

7

binding precedent." 716 F.3d at 587. From these indications, the Court sees several threads that permeate *Hill* and clarify what *Hill* prongs (1) and (2) require of a petitioner.

As the Court sees it, a petitioner that (A) relies on a Supreme Court case that changed the relevant "statutory interpretation . . . landscape" and (B) asserts a theory that was, at the time of § 2255 filing, foreclosed by binding precedent, satisfies *Hill*'s first two requirements. 836 F.3d at 597; *see also Lewis v. English*, 736 F. App'x 749, 752 (10th Cir. 2018) (citing *Hill* as exemplifying the "erroneous-circuit-foreclosure" test, permitting savings clause passage "if a circuit court's subsequently overturned interpretation of a statute precluded relief" at the § 2255 stage). That is Fraker's situation. Whether *King* turned on *Mathis*, *Descamps*, or *Shepard* is, as the Court sees it, mostly irrelevant.[4] All three are largely cases of statutory interpretation, and all three drove, to some extent, the *King* decision. Most critically, Circuit precedent foreclosed Fraker's *King*

---

[4] To the extent the Circuit interprets *Hill* otherwise, the Court, if required to decide, would find *King* sufficiently premised on *Mathis* for Fraker to clear *Hill* hurdles (1) and (2). *King*'s focus certainly encompassed *Mathis*'s prompting of a course correction in Sixth Circuit jurisprudence on proper resort to *Shepard* documents. *Compare King*, 853 F.3d at 274 (In analyzing the occasions-different question, "a sentencing judge is constrained to reviewing evidence approved by *Taylor* and *Shepard*."), *with United States v. Thomas*, 211 F.3d 316, 318 (6th Cir. 2000) (authorizing "consideration of the specific facts underlying the prior convictions"). *Hill* itself, relying in part on a *Descamps*-driven change in Fourth Circuit law, endorsed the idea that the gateway extends to Supreme Court-prompting of Circuit directional shifts eliminating what would have otherwise been a predicate. Thus, Fraker's § 2241 route is valid in light of the Sixth Circuit's application of *Hill*. *Mathis*—which is retroactive, *see, e.g.*, *Sutton v. Quintana*, No. 16-6534, 2017 WL 4677548, *2 (6th Cir. July 12, 2017)—was a falling domino that, through *King*, toppled *Thomas*. *See King*, 853 F.3d at 274 ("*Thomas* is abrogated by Supreme Court precedent."). If that tumble took out a predicate, as interpreted by the Sixth Circuit, then an affected defendant can seek relief under *Hill*. The fact that post-*Shepard* and *Descamps* the Court of Appeals was still examining *Thomas*-approved information for the "occasions-different" inquiry confirms the importance of *Mathis* to *King*'s overruling of *Thomas* and cinches the finding. *See United States v. Mann*, 552 F. App'x 464, 465 (6th Cir. 2014) (citing PIR-reported prior-conviction facts). Thus, because *Mathis* catalyzed *King* (and *King* overruled binding precedent: *Thomas*), then (via the liberalizing effects of *Hill*) an impacted petitioner could make the claim via the savings clause, in a miscarriage of justice scenario. Put differently, *King*, through *Mathis*, "revealed" that the occasions different analysis should include only *Shepard*-approved documents (just as *Royal* "revealed" the impact of *Descamps* in *Hill*).

8

argument, *see Thomas*, 211 F.3d at 318 n.3, until *King* held that intervening Supreme Court precedent (*Mathis* included) abrogated the contrary circuit rule.

This, as the Court sees it, is enough for Fraker to pass *Hill*'s first two checkpoints and earn a merits evaluation. The timing of the Circuit's invalidation of *Thomas* was "beyond [Fraker]'s control." *Hill*, 836 F.3d at 597. Further, the result here is consistent with *Hill*'s endorsement of practical analysis.[5] An alternative result would amount to setting an expectation that Fraker have brought his claim "before the intervening law [was] decided[.]" *Id.* at 599 (citation omitted).

Here, the Court finds only that a claim, if previously foreclosed by precedent and premised on a Circuit change spurred by the Supreme Court, clears *Hill*'s first two hurdles. However, the Court covets clarity on *Hill*'s precise scope. The Circuit has opened the gateway but not defined how wide swings the door.

---

[5] The Court, though tracking Circuit precedent in the substantive ruling, notes some logical concerns with the development of *Hill*. The *Sutton* Court found *Mathis* retroactively applicable based on the following reasoning:
> The Supreme Court has held that "an old rule applies both on direct and collateral review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). *Mathis* merely reinforces "the essential rule governing ACCA cases," set out "more than a quarter century" earlier: "All that counts under the Act ... 'are the elements of the statute of conviction.' " 136 S. Ct. at 2251 (quoting *Taylor v. United States*, 495 U.S. 575, 601 (1990)).

*Sutton*, 2017 WL 4677548, at *2. What then is the force of *Hill*'s 'retroactive' requirement? It seems clear, to this Court, that Circuit applications have winnowed that limit to **cases** that announce new non-retroactive **rules**. The rationale of *Sutton* and, *e.g., Muir v. Quintana*, No. 17-6050, 2018 WL 4276133, *2 (6th Cir. Apr. 26, 2018), make plain that Supreme Court cases that merely apply "old rule[s]" are not excluded by *Hill*'s 'retroactive' limits. Why? Because old rules apply on collateral review. *Hill*, an issue fountain, may or may not be the outer limit of the savings clause. Section 2255 has obvious procedural boundaries—hurdles for second or successive petitions and a sturdy statute of limitations. *See* § 2255(h) & (f). *Hill* defines the savings clause, on particular terms, as a mechanism to correct a misapplied sentence. How *Hill*'s approach would impact other scenarios subject to § 2255's limits is not clear. Section 2255(e) should not, it seems, by operating as a savings clause effectively eliminate the finality principles built into (h) and (f). The cases will tell that tale over time.

However, Fraker's claim is substantively meritless. The Government must preponderantly prove that the predicate burglaries occurred on separate occasions. *See United States v. Patterson*, 878 F.3d 215, 219 (6th Cir. 2017). The prosecution may carry its burden by proving <u>any one</u> of the following:

> (1) "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins"; (2) "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense"; or (3) "the offenses are committed in different residences or business locations."

*United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (quoting *United States v. Hill*, 440 F.3d 292, 297-98 (6th Cir. 2006)). The *Shepard* documents that a court may consider include "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Southers*, 866 F.3d at 369; *see also United States v. Moore*, 578 F. App'x 550, 554 (6th Cir. 2014) ("[S]tate-court judgments are valid *Shepard* documents.").

The Tennessee information and judgments preponderantly show that Fraker committed two aggravated burglaries on the same day at two separate residences. *See* DE 19 at 9–12.[6] Three record

---

[6] The Court rejects Fraker's claim that *Shepard*-document consultation is strictly limited to deciphering conviction elements. Petitioner's argument is internally inconsistent. Fraker effectively asks the Court to rely on *King* to the extent it aids his efforts to pass through the *Hill* portal but ignore its harmful implications for his claim's merits. As Fraker contends, the Circuit said that *Shepard* limits apply to ACCA enhancement determinations, "whether on the predicate-conviction or different-occasions question[.]" *King*, 853 F. 3d at 274. Yet, *King* also said: "to the extent that answering the different-occasions question requires a sentencing judge to identify the who, when, and where of the prior offenses, nothing we say here precludes a judge from doing so." *Id.* Thus, *King* applied the *Shepard* evidentiary **source** limitations to different-occasions analysis, but did not limit review of the **contents** of such sources to conviction elements. *Compare id.* ("We only hold that in identifying those <u>facts</u>, a sentencing judge is constrained to reviewing evidence approved by *Taylor* and *Shepard*."), *with id.* ("We agree . . . that the function of the categorical approach and its modified helper is to determine which elements, not which facts,

facts support the Court's conclusion: (1) the state charged the burglaries separately, (2) two discrete judgments memorialized the convictions, and (3) the counts listed two distinct habitation-owners (Stephanie Goins and Dirk Dandy). *Id.*[7] The records establish that "the offenses [were] committed in different residences" because Fraker "had to leave one residence in order to burglarize the second." *United States v. Carnes*, 309 F.3d 950, 956 (6th Cir. 2002). Certainly, it is *possible* that Goins and Dandy lived in the same residence. But, as the Court views the record, it is significantly more likely that the victims, with different last names,[8] of the independently charged and convicted burglaries resided separately.

The trial court considered only *Shepard* approved proof anyway—the judgments and state information. Thus, *King*, from an evidentiary standpoint, would have no impact on the analysis here.[9] The dispute really is over the trial court's finding, not the record basis for the finding. Fraker already has had several full shots at contesting that underlying predicate.

---

underlie a prior conviction."). This makes logical sense. If courts looking to *Shepard* records to answer fact-based, "different-occasions" questions were strictly limited to legal/elemental content, the process that *King* authorizes would be nugatory. Subsequent applications of *King* confirm that the Circuit did not impose Fraker's construct. *See, e.g.*, *Southers*, 866 F.3d at 369 (considering non-elemental indictment facts—business name and type—for different-occasions purposes); *Patterson*, 878 F.3d at 218 (calling *King*'s elements language "dicta" and looking to indicted conduct dates and business names/types for separate-occasions analysis).

[7] The Court notes some support from the fact that both incidents occurred on the same date. At first blush, this fact might weigh against a different-occasions finding. However, the Fifth Amendment's guarantee against double jeopardy, applicable to Tennessee through the Fourteenth Amendment, "protects not only against a second trial for the same offense, but also 'against multiple punishments for the same offense[.]'" *Whalen v. United States*, 100 S. Ct. 1432, 1436 (1980). Thus, if Goins and Dandy lived together and Fraker burglarized but a single dwelling by a single entry on September 26, 2002, the state's multiple judgments would signify double jeopardy concerns, an issue Fraker never raised through the years.

[8] This fact is, of course, not determinative as to cohabitation. Yet, just as shared last names would weigh in favor of a single offense finding, it is a factor.

[9] If the trial court assessed only *Shepard* documents, then *King*, which merely regulated the field of proper proof, is of no new moment to Fraker.

11

Further, per *Tolbert*, cited by Fraker, Tennessee treats the unit of prosecution in the burglary context as the "entry." *State v. Tolbert*, 507 S.W.3d 197, 215 (Tenn. Crim. App. 2016) ("[T]he legislature intended the unit of prosecution for burglary to be the number of entries, not the number of inhabitants inside a habitation."). The reference to distinct habitation owners, *see* Tenn. Code § 39-14-401 ("'Owner' means a person in lawful possession of property[.]"), in distinct counts strongly signals entry into two distinct locations or, at a minimum, that there were distinct entries. Count I addressed entry of a habitation owned by Stephanie Goins; Count II addressed entry of a habitation owned by Dirk Dandy. Tennessee convicted Fraker on both counts.

Fraker's citation to *Murphy* and the duplex hypothetical is unavailing. In that case, the defendant made only one entry and he faced liability, without actual entry, for a separate burglary as an aider and abettor. That defendant remained within the first dwelling as the second entry happened. *United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir. 1997); *see Hill*, 440 F.3d at 298 ("[T]he two violent felonies for which Murphy had previously been convicted were not committed on different occasions, because he had remained in the residence where the initial robbery had occurred, while his accomplices went to the adjoining residence to commit another robbery and that, therefore, the first offense had not been completed before the second occurred."). Such a theory has no application here, where separate counts and separate judgments addressed Fraker's separate and principal criminal culpability with respect to the Goins and Dandy burglaries. Had Murphy physically entered the other half of the duplex, the occasion would have been different under § 924.

For Fraker to win, the Court would have to find that Tennessee convicted him in blatant violation of Tennessee law and the Double Jeopardy clause—that he faced two convictions for one entry into one habitation. That is unlikely, as are Fraker's speculations. It is more likely than not

12

true that Fraker entered separate residences and received a count and conviction for each distinct occurrence.[10] The break in locations (or in entries) would signal commission on an occasion-different under § 924(e)(1) and Sixth Circuit law. *See Hill*, 440 F.3d at 298 ("[S]eparate offenses are committed if the offenses are committed in different residences[.]").[11]

In sum, the sentencing court referred to *Shepard*-authorized Tennessee records that sufficiently established that Fraker burglarized two habitations. Thus, as the sentencing court properly found, Fraker committed his offenses on separate occasions, and each is properly considered a distinct ACCA predicate. *See Southers*, 866 F. 3d at 369-70 ("Because the judgments and indictments establish that the robberies occurred at two different business locations, the district court did not err in treating them as distinct predicates under the ACCA."); *see also Patterson*, 878 F. 3d at 218–19; *United States v. Perez*, 477 F. App'x 337, 343 (6th Cir. 2012); *United States v. Brady*, 988 F.2d 664, 669 (6th Cir. 1993). Adding these to the (here unchallenged) Tennessee robbery predicate means that Fraker was an Armed Career Criminal, and the trial court properly sentenced him as such. For each of these reasons, Fraker is not entitled to § 2241 relief.

Accordingly, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 1 & 19; and

2. The Court will enter a separate Judgment.

This 23rd day of July, 2019.

---

[10] This is, in truth, only an academic exercise. Fraker personally affirmed under oath that he had the prior convictions. *Fraker I*, ECF No. 61 at 11 (Sentencing Tr.). His lawyer described the offenses as "committed within 24 hours of each other." *Id.* at ECF No. 54 at 5. The sentencing process did not subject Fraker, who separately victimized Tennessee homeowners, to a miscarriage of justice.

[11] To be convicted, as to the convictions at issue, Fraker thus admitted to (and the Tennessee court adjudicated Fraker guilty of) entering the homes of two different owners. That is the state of the record. Given Tennessee law, this establishes more probably than not that Fraker committed the crimes on different occasions.



Signed By:
*Robert E. Wier*
United States District Judge